# SUPREME COURT.

THE PEOPLE *ex rel.* JAMES E. JENKINS and JOHN A. CONDIT agt. THE PARKER VEIN COAL COMPANY and others.

A *corporation* has no more power than is conferred upon it by the act of incorporation.

The officers, directors, and stockholders of an incorporated company cannot, even by an unanimous agreement made under an honest misapprehension of their powers, increase the capital of the company, or give to the corporation any increased power beyond that which has been conferred upon it by the law of the legislature.

If the officers and directors of an incorporation, with even the unanimous consent of the stockholders, should, without legislative sanction, increase the capital of the company, or issue certificates of stock beyond the amount of capital, or assume to exercise other powers not given to the corporation by the legislature, such unauthorized acts would be good cause to cancel its charter.

It cannot be, therefore, that an *officer* of a corporation, by a secret and fraudulent act of issuing certificates of stock beyond the amount of the capital, can make such an act legal and binding, when the unanimous action of the whole corporate body could not do it.

Nor can the courts, whose duty it is to sustain the law in its integrity, to punish fraud and crime, declare that such fraudulent act of the officer is legal and binding.

Nor can a court declare these false and fraudulent certificates of over issues of stock, to be genuine, as between the holders of them and the stockholders of the company, because the stockholders elected the directors and appointed the officers, gave them credit in the community, and that the community could not tell whether the official was acting illegally or not; and that, as the officer was the agent of the stockholders, they are responsible for his acts, because he was authorized by them to issue stock. Such a principle would entirely

destroy the business of a commercial community, where, of necessity, business must be transacted by agents.

An agent can only bind his principal when he acts within the power delegated to him.

A corporation, being limited in its powers by law, cannot, either expressly or by implication, authorize acts to be performed bv its agent not permitted by its charter.

Where it appeared that the relators owned stock in the Parker Vein Coal Company, and had, sold shares of it, and had bought other shares; and that the company, having become insolvent, refused to allow them to transfer the shares on the books of the company,

*Held*, that the remedy of the relators was not by *mandamus*, but by *action*.

A *mandamus* partakes of the character of a *public* writ, and is not allowed, except for the purpose of controlling those who owe a public duty to the state in which it issues.

*New-York General Term, Dec., 1854.*

MITCHELL, MORRIS, and CLERKE, Justices.

APPEAL from order of special term refusing mandamus. (*See ante, page* 186.)

The Parker Vein Coal Company is an incorporation of the state of Maryland. Its charter creates it a corporation "for the purpose of working mines of coal and iron, and for vending the proceeds of the same;" gives it power "to make by-laws, and all such rules and regulations as may be necessary for the proper management of its affairs—PROVIDED *the same be not repugnant to the laws of the state, or of the United States.*"

The capital stock of the company is not to exceed $3,000,000, to be divided into shares of $100 each—being 30,000 shares.

The officers of this company have issued 150,000 certificates of shares of stock—being 120,000 certificates of shares of stock more than the company, by law, is permitted to issue—purporting to represent $12,000,000 more capital than the company possesses, or can possess, as established and limited by the law of incorporation.

In June, 1854, the company was insolvent, and made an assignment to Romaine & Darrow, of all their property of every description, for the benefit of creditors.

The plaintiffs are partners, engaged as brokers, in the pur-

chase and sale of stocks, for themselves, and for account of other persons.

Plaintiffs have standing in their name, upon the books of the company, several hundred shares of the capital stock, of which they are the legal holders and owners; and they also hold stock certificates in the usual form, issued for a large number of its shares of capital stock, signed by its proper officers, of which also they are the legal holders and owners.

One of the by-laws of the company requires a book, or books, to be kept by the company, for the transfer of its stock.

The corporation has a principal office in the city of New-York, and kept, and now keeps at that office, books for the transfer of its stock.

At the last election of directors, which was since the assignment of June, 1854, the defendants in this cause were elected directors and officers, and now have charge of the books.

About the 3d of June last, (1854,) the officers and directors closed their transfer books; since which they have refused, and still refuse to permit transfers therein, of any of the shares of the capital stock.

It is impossible, from an inspection of the certificates of stock, to designate which are the genuine, and which are the over-issue certificates.

The plaintiffs have applied to the present officers and directors to be permitted to transfer stock to persons to whom they have sold; and have been refused access to the books.

Plaintiffs claim that this refusal to permit transfers upon the books is of great detriment to them and to their business, is injurious to the company and its stockholders, and depresses the market and intrinsic value of the stock; and they ask for a mandamus to compel the defendants to open the transfer books to the plaintiffs, and to all such stockholders as may desire to transfer stock.

The plaintiffs insist, that it is not denied that their certificates are a portion of the 30,000 genuine certificates; and also suggest that the 120,000 over-issue certificates, having been issued by officers of the incorporation who are authorized to

issue certificates of stock, must be deemed genuine certificates.

———— ————, *for plaintiff.*
———— ————, *for defendants.*

By the court—MORRIS, Justice. The object of incorporating stock companies is to aggregate, from the many, sufficient capital to conduct a business which the fortune of an individual is not sufficient to transact, so that the community may be benefited by the active employment of the capital in business useful to them.

Individuals are induced to invest their moneys in these stock companies, from the fact that, by law, they are not personally responsible (unless declared to be so by the charter) for any debt, obligation, or trespass of the corporation; and because all that the stockholder can lose is the amount of money he voluntarily invests. The stockholder is also protected, as regards the money he invests, by the fact that the charter of the company limits and confines the business to be transacted, in kind and extent—does not permit a majority of stockholders, of directors or officers, to exceed the power given by the statute, or to bind the capital of the company bv acts beyond those expressly permitted by the charter.

The individual stockholder sees, in the charter and laws, all the powers given to stockholders, directors, and officers, and for such purposes he confides the amount he invests.

Courts, knowing the language of the act of incorporation, and that no act of directors and officers, not authorized by the charter, can bind the stockholder or his investment, in many instances, direct guardians of infants, and trustees of estates, of idiots, and of the insane, to invest their funds in the stock of incorporated companies.

In this state, certain stocks are made the basis of the circulating medium of our banking institutions, and are by the banks deposited with the comptroller of the state, as security to pay the billholders of the bank. This was done because our legislators had confidence in the laws creating those stocks, and be-

cause they knew that the fraudulent criminal conduct of the officials empowered to issue such stock, could not, by fraudulently issuing false certificates, invalidate, or depress in value, the genuine stock issued under such laws.

A corporation has no more power than is conferred upon it by the act of incorporation.

The officers, directors, and stockholders of an incorporated company, cannot, even by an unanimous agreement, made under an honest misapprehension of their powers, increase the capital of the company, or give to the corporation any increased power beyond that which has been conferred upon it by the law of the legislature.

If the officers and directors of an incorporation, with even the unanimous consent of the stockholders, should, without legislative sanction, increase the capital of the company, or issue certificates of stock beyond the amount of capital, or assume to exercise other powers not given to the corporation by the legislature, such unauthorized acts would be good cause to cancel its charter. Can it then be contended that an officer of the company, by a secret and fraudulent act, can make an act legal and binding, which the unanimous action of the whole corporate body could not do? Can the courts, whose duty it is to sustain the law in its integrity, to punish fraud and crime, declare that such fraudulent act of the officer is legal and binding? Can adjudge that the corporation has a capital of $15,000,000, when the legislature, by its charter, said it should not have to exceed $3,000,000? Can decide that the incorporation have 150,000 shares of stock of $100 each, when the legislature have declared, by the charter, that it shall only have 30,000 shares of $100 each? I think not. If such be the law-making effect of fraudulent transactions of an officer of a stock company, then a swindling official has more law-making power, exercised by the commission of a crime, than has the legislature of the state; for his criminal act destroys the restrictive law of the legislature, and creates, where the legislature said there should be no existence.

It is also claimed, that the court must declare these false

and fraudulent certificates to be genuine, as between the holders of them and the stockholders of the company, because the stockholders elected the directors and appointed the officers, gave them credit in the community, and that the community could not tell whether the official was acting illegally or not; and that, as the officer was the agent of the stockholders, they are responsible for his acts, because he was authorized by them to issue stock.

Such principle would entirely destroy the business of this commercial community, where, of necessity, business must be transacted by agents.

An agent can only bind his principal, when he acts within the power delegated to him. There may be in the transactions of individuals a question as to the extent of the power delegated, because individuals may bind themselves to any pecuniary amount; and in the transactions of individuals, conduct may be such as to confer greater power upon the agent than the principal intended; but when the extent of the power delegated is established, no act of the agent beyond that power can bind the principal.

A corporation, being limited in its powers by law, cannot, either expressly or by implication, authorize acts not permitted by its charter. Therefore there is no difficulty in determining the limit of the power it delegates.

An individual, A, gives a written power of attorney to B, his agent, to execute for him, and in his name, three notes of $1,000 each. After the agent has executed the three notes, he exhibits the power of attorney, suppressing the fact that the power delegated has been exhausted, continues to issue $1,000 notes, and succeeds in getting off one hundred such notes.

The notes, after the first three, are void, as regards the principal, no matter how much innocent persons may have been injured: they dealt with an agent at their peril, and it was their duty, at the time they took the note, to see that the agent then had the power to give it—that he had not exhausted the power which had been conferred upon him.

The law creating the Parker Vein Coal Company contains

all the power and authority that can be exercised by stock-holders, directors, or officers; it may be deemed their written power of attorney. Such charter is the law of the land, and all persons are bound to know it. Ignorance of the law is no excuse, even for crime; and all persons are bound to know that the company had only $3,000,000 of capital stock, and that its officers could issue only 30,000 shares of $100 each; and when they purchased stock they did so at their peril, and should have ascertained whether he had exhausted his power.

It may be that the $3,000,000 stock of this company, or much of it, is held by original subscribers, who paid par value for it, as an investment, for the honest purpose of having the mines worked for the benefit of the community, relying upon the income from the business to compensate them for their investment; and it may be that the funds of infants, lunatics, and the insane are thus invested. Would it be just to compel persons, who have thus invested 3,000,000 of dollars, to divide that sum among the persons who hold the spurious stock to the ostensable amount of $12,000,000, when there is no probability they have paid any such amount for it.

If the persons who hold this spurious stock were really ignorant of the fraud that was being perpetrated, they have their remedy against the persons who defrauded them; in which case they would not recover the face of the false certificate, but only the amount they gave for it

The 120,000 false certificates, purporting to represent $12,000,000, cannot be enforced against the company.

Certificates of stock are evidence of the ownership of stock; they are witnesses to prove the amount of stock issued, and to whom it belongs. Should the books be opened for the transfer of stock, these 120,000 fraudulent certificates—false witnesses—could be, indiscriminately with the 30,000 genuine certificates, transferred upon the books of the company, and would greatly confuse the evidence in relation to both sets of certificates, and cause it to be more difficult to trace the false certificates, and to discriminate between the genuine and the spurious; and would enable holders of the false certificates,

with greater facility to put them in circulation, and deceive the ignorant and confiding.

The evidence of these respective claims should be left as it now stands. Parties should not receive aid from the courts in the manufacture of evidence to assist them in the investigation that must follow; neither should the public be further exposed to pecuniary injury from transfer of these fraudulent certificates.

Order of special term should be affirmed, and mandamus denied, with costs.

MITCHELL, Justice. The complainants show that they own stock in the Parker Vein Coal Company, and have sold shares of it held by them, and bought other shares; and that the company refuses to allow them to transfer the shares on the books of the company. The complainants applied at special term for a mandamus, to compel the company to allow the transfer in both cases. The motion was denied, and they appeal.

A similar application was made in *Shipley* agt. *The Mechanics' Bank*, (10 *J. R.* 484,) in the year 1813, and denied. The court said, that the applicants had an adequate remedy by an action on the case; that it was not a matter of *public* concern, and there could be no necessity of possessing the identical property, as in the case of a favorite chattel, *protium affectionis;* and that by recovering the market value of the shares, they could be replaced. These are all good reasons, and equally applicable to this case. The same decision was again made in 1843, in the matter of the *Firemen's Insurance Company* agt. *The Commercial Bank of Albany,* (6 *Hill,* 243;) and on the ground that where a corporation improperly refuses to transfer stock, the party injured has an ample, though not a specific, remedy by action. When the applicant has such remedy, and is a private person, he is left to that relief, unless he claims a right to exercise an office, perform a public service, or exercise a franchise; or the defendant holds a public office, and neglects to perform a duty prescribed by law, and which is imposed for the public benefit, and is not a mere private right. Of the last

The People *ex rel.* Jenkins, &c. agt. The Parker Vein Coal Co., &c.

class was the case of *The People* agt. *Steele*, (2 *Barb. S. C. R.* 397. See the remarks of Lord MANSFIELD, *as quoted by Judge* EDMONDS *there at p.* 417.)

The cases of *Kortright* agt. *Buffalo Commercial Bank*, (20 *W.* 91; *affirmed* 22 *Wend.* 348,) and of *Pollock* agt. *The National Bank*, (3 *Selden*, 274,) show that the remedy by action is effectual, and readily obtained.

It is said, that the action will be only a sort of suicide, as the stockholders would be suing themselves. The fact that the applicants own other stock, cannot be a foundation for giving them a remedy refused to all other parties whose stock the company will not transfer. If, as suggested, the company is insolvent, the applicants will be better off in a suit, where they recover damages, and hold the judgment as creditors, than if they compelled a transfer of the stock, and so were to be postponed to all creditors. If the company is solvent, the damages which they will recover will be a full compensation for all the injury which they sustain by loss of the stock.

There is also another difficulty in this application. The mandamus partakes of the character of a *public* writ—one in which the people are in some way interested; and it has never been allowed except for the purpose of controlling those who owe a public duty to the state in which it issues. This company is incorporated in Maryland; and although it has an office here, and may be sued here on its contracts and obligations to individuals or others, yet it does not owe *allegiance* or *public* duties to this state, or according to the laws of this state, but to the state of Maryland, and according to the laws of that state. If it violates its charter, the remedy should be in Maryland, and not here. On *quo warranto*, its charter could not be taken away here; and while it does not violate any law of our state, the state should not interfere with it.

The order appealed from is affirmed, with costs.


TOMPKINS agt. ACER.
ISAAC S. SMITH, [L. S.]